IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE JOHNSON, | ) | |
| | ) | Case No. 14 CV 09432 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Hon. John Z. Lee |
| CHICAGO TRANSIT AUTHORITY, and | ) | |
| BOARD OF DIRECTORS OF CHICAGO | ) | |
| TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Maurice Johnson ("Johnson") filed this lawsuit against Defendants Chicago Transit Authority ("CTA") and Board of Directors of Chicago Transit Authority ("CTA Board") (collectively "Defendants"), alleging Defendants, violated the Metropolitan Transit Authority Act ("MTAA"), 70 Ill. Comp. Stat. 3605/28; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* as amended by the Civil Rights Act of 1991 ("Title VII"); 42 U.S.C. § 1983; and the Fraud Act of 2006, Fraud Act 2006, c. 35 (UK) ("the Fraud Act"). In short, Johnson contends that CTA discharged him in violation of the MTAA, discriminated against him based on gender, retaliated against him by discharging him in violation of Title VII, and presented false information to the Equal Employment Opportunity Commission ("EEOC") in violation of the Fraud Act. Johnson also contends that the CTA Board violated his right to equal protection under the law when it discharged

1

him based on gender and retaliated against him for complaining about gender discrimination in violation of § 1983.

CTA now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Johnson fails to state a claim upon which relief can be granted.[1] For the following reasons, the Court grants in part and denies in part CTA's motion.

## Factual Background

Johnson is a former employee of CTA who worked as a full-time Administration Manager. Compl. ¶ 12. While he worked as an Administration Manager, Johnson was suspended for five days after an error that caused the bus drivers to "repick" during the "Spring 2013 Pick." *Id.* ¶ 21.[2] Believing that no female Administration Manager had been suspended for a repick, Johnson emailed CTA President Forrest Claypool on May 2, 2013 and, receiving no response, again on June 19, 2013. *Id.* ¶¶ 23–24.

Following the June 19, 2013, email, Johnson received a response from CTA's Deputy General Counsel. *Id.* ¶ 25. The General Counsel lowered the suspension

---

[1] Because CTA's partial motion to dismiss does not address Count II alleging Title VII discrimination on the basis of gender, the Court does not address the sufficiency of that claim. Additionally, Johnson has agreed that dismissal of Count V the Fraud Act claim is proper, Pl.'s Resp. 1, that claim has been withdrawn, and the Court does not address its merits here.

[2] The Court notes that the submitted briefs specify neither what constitutes a "repick" nor what the "Spring 2013 Pick" is. The Court interprets the Spring 2013 Pick as an event in the spring of 2013 where employees "pick full weeks of vacation in seniority order" allowing CTA "to control the number of vacationing employees during any one week." *Morris v. Chicago Transit Auth.*, No. 00 C 740, 2004 WL 527085, at *1 (N.D. Ill. Mar. 11, 2004). A "repick" is therefore interpreted to be an unplanned recurrence of this event in order to correct an error.

2

from five days to three days. *Id.* The Deputy General Counsel also suggested that Johnson contact CTA's Manager, EEO-Diversity, Bethany Drucker, if he had any concerns that CTA had violated policies or applicable laws. *Id.*

Johnson met with Drucker on or about June 21, 2013. *Id.* ¶ 26. Drucker informed Johnson that he seemed to have valid complaints and that she would investigate the issues and get back to him within six months. *Id.* Drucker never responded after this initial meeting, and Johnson later discovered that she no longer represented CTA as the Manager, EEO-Diversity. *Id.*

Following his meeting with Drucker, on or about July 8, 2013, Johnson met with Monica M. McMillan Robinson, the CTA's Vice President of Bus Operations, and, Adrian A. Lewis, General Manager for Infrastructure & Capital Projects. *Id.* ¶ 27. At the meeting they discussed the repicks caused by Johnson and his emails to the President Claypool. *Id.* Robinson informed Johnson that he should not have taken his issues directly to the President Claypool, but rather, he should have gone through the ranks and met with her. *Id.*

Five months later, on or about September 11, 2013, CTA issued letters of notice to its Administration Managers informing them that CTA was abolishing various positions, including Johnson's. *Id.* ¶ 28. Johnson's last day of employment was December 31, 2013. *Id.*

## **Legal Standard**

Motions to dismiss challenge the sufficiency of the complaint, not the merits of the case. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When

3

considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park,* 734 F.3d 629, 632 (7th Cir. 2013). To survive a Rule 12(b)(6) challenge, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *see* Rule 8(a)(2), such that it gives the defendant "fair notice" of the claim and "the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The claim must be "plausible on its face." *Twombly*, 550 U.S. 544 at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Additionally, *pro se* complaints are held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Unsupported conclusions of fact and conclusions of law remain insufficient to defeat a motion to dismiss. *Young v. Breeding*, 929 F. Supp. 1103, 1106 (N.D. Ill. 1996).

## Analysis

### I. Title VII Retaliation Claim

CTA asserts that Johnson's retaliation claim should be dismissed because he has not alleged engagement in any protected activity and because he has not pleaded a causal connection between his complaints and his job abolishment. To

4

plead a claim for retaliation under Title VII Johnson must "allege that [he] engaged in statutorily protected activity and was subjected to an adverse employment action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). *Pro se* filings are held to less stringent standards than formal pleadings drafted by lawyers with the primary goal being to give *pro se* filings fair and meaningful consideration. *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 858 (7th Cir. 2011) (internal quotations omitted). "[T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together . . . . In other words, the court will ask itself could these things have happened, not did they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

Underscoring the general deference given to *pro se* filings, the Civil Rights Act is designed to protect those least able to protect themselves; complainants to the EEOC are seldom attorneys. *Maisonet v. Duraco, Inc.*, No. 09-CV-6320, 2010 WL 4876731, at *3 (N.D. Ill. Nov. 23, 2010) (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 168 (7th Cir. 1976)). "In the context of Title VII, no one – not even the unschooled – should be boxed out." *Jenkins*, 538 F.2d at 168.

CTA asserts that, to the extent that Johnson claims any alleged retaliation was due to the meeting with the CTA EEO-Diversity Manager Drucker, such claims must fail. CTA argues that where there is no indication that a grievance referenced discrimination in violation of Title VII, the filing of such a grievance cannot form the basis for protected activity. CTA also argues that, to the extent that Johnson claims any alleged retaliation was due to his correspondence with CTA President

5

Claypool, those claims must fail because such correspondence does not form the basis of a Title VII retaliation claim.

These arguments are not well-taken. Examining the Complaint as a whole, Johnson alleges that female drivers did not receive suspensions when they caused "repicks." *See* Compl. ¶ 87. Johnson also alleges that he discussed his concern of gender discrimination with Drucker when he met with her on June 21, 2013. *See* Compl. ¶ 90. Furthermore, Johnson incorporates all prior allegations of the Complaint into the retaliation claim. Compl. ¶ 85. This includes all allegations of discrimination on the basis of gender, including the more favorable treatment of similarly situated female employees with regard to termination. Compl. ¶ 66. Also included are allegations regarding his contacting President Claypool discussing his suspension on May 2, 2013 and again on June 19, 2013, as well as his meeting with Vice President Robinson and General Manager Lewis on or about July 8, 2013. Compl. ¶¶ 23–27

It is plausible that Johnson, in his emails to President Claypool, during his meeting with the EEO-Diversity Manager Drucker, and during his meeting with Vice President Robinson and General Manager Lewis, complained of gender discrimination as the cause of his suspension. It is plausible, therefore, that a causal connection exists between any of those potentially protected activities and his subsequent discharge. Liberally construing the Complaint in Johnson's, the Court finds that Johnson has stated a claim for retaliation. The Court denies CTA's motion to dismiss Johnson's retaliation claim.

## II. § 1983 Claim

CTA argues that Johnson's § 1983 claim should be dismissed because he has named a legal non-entity as defendant. But if a *pro se* plaintiff has named the wrong defendant, the Court may cure the problem at any time, on just terms, by adding or dropping a party. Fed. R. Civ. P. 21; *Brown v. Chii Mun. Emps. Credit Union*, No. 13 C 02597, 2014 WL 1613037, at *4 (N.D. Ill. Apr. 16, 2014) (citing *Bavido v. Apfel*, 215 F.3d 743, 747 n.3 (7th Cir. 2000)).

It is unclear from the Complaint and the treatment of the parties whether Johnson has sued the CTA Board members in their official capacity, their individual capacity, or both. In § 1983 claims that do not specify the capacity in which the defendant has been sued, the Court examines the allegations of the complaint and the relief sought to determine the capacity in which the defendant is being sued. *Kolar v. Cnty. of Sangamon*, 756 F.2d 564 (7th Cir. 1985) (reviewing the contents of the complaint to conclude whether the suit against the defendant was an official capacity suit); *Stevens v. Umsted*, 131 F.3d 697, 707 (7th Cir. 1997) ("A court must also consider the manner in which the parties have treated the suit[.]") (quoting *Conner v. Reinhard*, 847 F.2d 384, 394 n.8 (7th Cir. 1988)); *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000) ("[W]here the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity").

On the one hand, Johnson seeks "compensatory and punitive damages" for the alleged § 1983 violations. Compl. ¶ 84. This relief supports an inference that

7

Johnson is proceeding against the CTA Board and its members in their individual capacities. A plaintiff may recover punitive damages in an individual capacity suit but is barred from such recovery in an official capacity suit. *Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir. 1991).

However, Johnson also seeks "equitable relief," Compl. ¶ 84, from the CTA Board's alleged actions which "treated [him] differently on the basis of his sex" and "treated other similarly situated female employees more favorably." *Id.* ¶¶ 76–77. These allegations are less like an individual capacity lawsuit and more akin to allegations of discriminatory official policies from which Johnson seeks relief. Where a plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in its official capacity. *Miller*, 220 F.3d at 494. Because Johnson could be proceeding against the Defendants under either theory, the Court examines the sufficiency of the pleadings under both.

### A. Official Capacity

Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). A lawsuit against the members of the CTA Board in their official capacities is therefore a suit against CTA itself. A municipal entity like CTA may be liable under § 1983 if CTA itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. *See Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). A plaintiff seeking to impose

liability on a municipal entity under § 1983 must prove that "action pursuant to official municipal policy" or "custom" caused the injury. *Monell*, 436 U.S. at 691.

Here, the Board of Directors of CTA is the final policymaking authority for establishing the employment decisions of CTA. *Radic v. Chi. Transit Auth.*, 73 F.3d 159, 161 (7th Cir. 1996). Therefore, actions taken by the CTA with respect to employment decisions are official policies to which municipal liability attaches. *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 510 (7th Cir. 1993) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered"). On September 11, 2013, CTA Board enacted Ordinance No. 013-128 approving the abolishment of positions (including Johnson's). Defs.' Mem. Supp. Mot. Dismiss Ex. 1. The abolishment of Johnson's position was therefore pursuant to an official policy. And the Court need not address, at this stage, whether Johnson has proven pretext in the abolishment of his position. *See Hoglund v. Signature Mgmt. Grp., Inc.*, No. 08 C 5634, 2009 WL 1269258, at *2 (N.D. Ill. May 4, 2009) ("For the same reason, the Court declines to stray from the general rule that it is inappropriate to make determinations regarding pretext at the pleading stage and denies Signature's motion to dismiss."). The Court denies CTA's motion to dismiss Johnson's § 1983 official capacity claim.

### B.  Individual Capacity

Individual-capacity lawsuits seek to impose personal liability upon a government official for actions he takes under color of state law. *Graham*, 473 U.S.

at 165. In an individual-capacity suit, § 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003).

Here, the Complaint alleges only that the CTA Board, as a whole, "treated [him] differently on the basis of his sex" and "treated other similarly situated female employees more favorably." Compl. ¶¶ 76–77. Johnson does not allege any discriminatory actions by the individual members of the CTA Board. Absent specific allegations of individual conduct causing or participating in a constitutional deprivation, the Complaint fails to satisfy the pleading requirements for a § 1983 individual-capacity suit. The Court dismisses any § 1983 personal liability claims and requests for punitive damages Johnson brings here.

### III. MTAA Claim

CTA correctly asserts that the MTAA, 70 Ill. Comp. Stat. 3605/28, provides no private right of action. Further, the Court agrees that no private right of action should be implied. Where a statute lacks explicit language granting a right to pursue an action for damages, a court may still determine that a private right of action is implied by the statute. *Fisher v. Lexington Health Care*, 188 Ill. 2d 455, 460 (1999). The Illinois Supreme Court has held that implication of a private right of action is appropriate where:

> "(1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying

> purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute."

*Id.* In enacting the MTAA, the underlying purpose of the General Assembly was "to organize the Metropolitan Transit Authority for a municipal public purpose, i.e., to operate an adequate and modern transportation system suitable and adapted to the needs of the municipalities served by the Authority." *People v. Chi. Transit Auth.*, 392 Ill. 77, 87 (1945).

Assuming, *arguendo*, that implication of a private right of action were consistent with that underlying purpose, such an implication is unnecessary to provide an adequate remedy for violations of the statute. The section of the MTAA upon which Johnson relies proscribes discrimination generally and discrimination in discharge or demotion specifically. 70 Ill. Comp. Stat. 3605/28 (2014). Employees believing themselves subject to a discriminatory discharge may, within ten days after notice of discharge, file a complaint in writing with the CTA Board. *Id.* The CTA Board then grants a hearing reviewing the discharge. *Id.* Decisions of the CTA Board from such hearings are subject to common law certiorari review by the courts. *Bono v. Chi. Transit Auth.*, 379 Ill. App. 3d 134, 142-43 (2008). The procedures of the statute provide adequate remedy against discriminatory discharge.

The section also provides the CTA Board with authority to abolish any occupied position. 70 Ill. Comp. Stat. 3605/28. Johnson alleges that he was denied his rightful hearing before the CTA Board. Comp. ¶¶ 29–30. But the MTAA does not provide for a hearing process following an abolishment. 70 Ill. Comp. Stat.

3605/28. As Johnson's position was abolished, no hearing under the MTAA was required. In the case where an abolishment is alleged to have been pretextual, such claims are addressed, as they are here, under § 1983. Further implication of a private right of action is unnecessary to provide an adequate remedy. Johnson makes no argument under the rubric of *Fisher* or otherwise that convinces the Court that a private right of action under the MTAA should be recognized.

Finding no explicit private right of action, and declining to imply one, the Court dismisses any MTAA claim Johnson brings here.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part CTA's motion to dismiss [22]. The Court dismisses Johnson's claims under the MTAA (Count I), the Fraud Act (Count V), and any individual capacity claims under § 1983 (Count III). Remaining are Johnson's claims under Title VII of gender discrimination (Count II), retaliation (Count IV), and any official-capacity claim under § 1983 (Count III).

**SO ORDERED**  ENTER: 8/24/15

_____
**JOHN Z. LEE**
**United States District Judge**