# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 9432 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| CHICAGO TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Maurice Johnson ("Johnson"), a *pro se* plaintiff, has sued the Chicago Transit Authority ("CTA") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1983. He alleges that CTA discriminated against him on the basis of his gender and retaliated against him for engaging in statutorily protected activity. CTA has moved for summary judgment as to these claims. For the reasons stated herein, CTA's motion [88] is granted.

## Factual Background[1]

CTA is a municipal corporation that provides public transportation. Def.'s LR 56.1(a)(3) Stmt. ¶ 4, ECF No. 90. In February 2009, CTA hired Johnson as an administrative manager in its Bus Operations Department. *Id.* ¶ 5. In spring 2013, bus operators at Johnson's work location had to "re-pick their runs" as a result of an

---

[1] Except where otherwise noted, the following facts are not in material dispute.

error that Johnson made. *Id.* ¶¶ 8, 10–11. Because his error caused this "re-pick," Johnson was suspended from work for three days as of May 1, 2013. *Id.* ¶¶ 8–12.[2]

Johnson was suspended by his male supervisor, Adrian Lewis. *Id.* ¶ 12. According to Johnson, however, Lewis suspended him only because Lewis's female supervisor, Mersija Besic, instructed him to do so. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 12. Johnson believes he was suspended because Besic and another female employee, Monica McMillan-Robinson, thought Johnson had insulted them in meetings and therefore disliked him. Def.'s LR 56.1(a)(3) Stmt. ¶ 15.

On May 2, 2013, the day after he was suspended, Johnson sent a letter to then–CTA President Forrest Claypool. *Id.* ¶ 17. In his letter, Johnson stated that his suspension was the result of the "personal feelings" that Besic felt toward him. *Id.* ¶ 20. The letter did not claim that Johnson had been suspended because of his gender. *Id.* ¶ 22. Nor did it advance any allegations of discrimination. *Id.* ¶ 19.

On June 21, 2013, several weeks after his suspension, Johnson filed a complaint with Bethany Drucker, an employee in CTA's Equal Employment Opportunity Unit. *Id.* ¶¶ 25–26. The parties disagree as to whether Johnson's complaint to Drucker involved allegations of discrimination in violation of Title VII. *Id.* ¶ 27; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 27.

On September 11, 2013, CTA's Board of Directors passed an ordinance abolishing dozens of positions within CTA's workforce. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 32, 34; *id.*, Ex. 12, at 1. Among other positions, the ordinance approved the

---

[2] For reasons that are hard to fathom, the parties' filings do not explain what a "re-pick" is or what it means for bus operators to "re-pick their runs."

abolishment of "[u]p to 7" positions with the title "Manager, Administration – Bus." *Id.*, Ex. 12, at 3. That same day, CTA notified all employees holding "Manager, Administration" positions within the Bus Operations Department—including Johnson—that their positions had been abolished. *Id.* ¶ 36.[3]

After Johnson was notified that his position would be abolished, he applied for other CTA jobs at the encouragement of McMillan-Robinson—one of the same women who, according to Johnson, had played a role in Johnson's suspension several months prior. Def.'s LR 56.1(a)(3) Stmt. ¶ 40. Johnson applied for the positions of Senior Manager and General Manager, but he was not hired. *Id.* ¶¶ 41, 43. Johnson's employment at CTA was therefore terminated on December 31, 2013. *Id.* ¶ 38.

## **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material

---

[3]  In his Local Rule 56.1(b)(3)(B) statement, Johnson does not indicate whether he disputes this fact. The fact is therefore deemed admitted for purposes of CTA's summary judgment motion. *See* LR 56.1(b)(3) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). The Court notes that Johnson was on notice of his obligation to comply with Local Rule 56.1, because CTA filed and served a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" in June 2016 pursuant to Local Rule 56.2. *See* ECF No. 91.

3

facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

In reviewing a motion for summary judgment, courts "must construe all facts and reasonable inferences in favor of the nonmoving party." *Dorsey*, 507 F.3d at 627. But "[i]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Id.* (quoting *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004)) (internal quotation marks omitted). "[S]aying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact." *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510–11 (7th Cir. 2010).

## Analysis

### I. Gender Discrimination Under Title VII and § 1983

First, Johnson claims that CTA discriminated against him on the basis of his gender in violation of Title VII and § 1983 by suspending him for three days in May 2013 and later terminating his employment. Employment discrimination claims brought under Title VII and § 1983 are governed by the same legal standards. *Steinhauer v. DeGolier*, 359 F.3d 481, 483 (7th Cir. 2004); *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003). Thus, to avoid summary judgment on his discrimination claims, Johnson must show that the evidence, considered as a whole, would permit a reasonable fact finder to conclude that his gender caused his

4

suspension or termination. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *Steinhauer*, 359 F.3d at 483.

One of the ways—though not the exclusive way—that Johnson can make this showing is by using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). In a "reverse discrimination" case such as the present one, *McDonnell Douglas* asks the plaintiff to make a *prima facie* case of discrimination by establishing that: "(1) background circumstances exist to show an inference that the employer has reason or inclination to discriminate invidiously against whites [or men,] or evidence that there is something 'fishy' about the facts at hand; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated individuals who are not members of his protected class." *Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016) (quoting *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005)) (internal quotation marks omitted); *accord Gore v. Indiana Univ.*, 416 F.3d 590, 592 (7th Cir. 2005). If the plaintiff establishes these *prima facie* elements, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Formella*, 817 F.3d at 511. In turn, if the defendant meets this burden, the burden shifts back to the plaintiff to show that the defendant's asserted nondiscriminatory reason is mere pretext for discrimination. *Id.*

5

For the reasons explained below, with or without the *McDonnell Douglas* framework, no reasonable fact finder considering the evidence as a whole could conclude that CTA discriminated against Johnson on the basis of his gender. CTA is therefore entitled to summary judgment in its favor as to Johnson's discrimination claims.

A.  **Suspension**

First, Johnson asserts that he was discriminated against on the basis of his gender when he was suspended in May 2013 for causing a re-pick.[4] In support, his sole argument is that a reasonable jury could infer intentional gender discrimination based on the fact that two similarly situated female employees also caused re-picks but were not suspended for their mistakes. Pl.'s Resp. at 12–13.

When a plaintiff asks the fact finder to infer discrimination based upon the disparate treatment of similarly situated employees, the employees in question "must be 'directly comparable in all material respects.'" *Ineichen v. Ameritech*, 410 F.3d 956, 960 (7th Cir. 2005) (quoting *Sartor v. Spherion Corp.*, 388 F.3d 275, 279 (7th Cir. 2004)). "[T]he similarly situated co-worker inquiry is a search for a substantially similar employee, not for a clone." *Weber v. Univ. Research Ass'n, Inc.*, 621 F.3d 589, 594 (7th Cir. 2010) (internal quotation marks omitted). But, at the

---

[4]  CTA argues that Johnson cannot prevail on his discrimination claim to the extent it is based on his suspension, because Johnson did not mention his suspension in his EEOC charge and thus has failed to exhaust administrative remedies. Def.'s Mem. Supp. at 8, ECF No. 89. But, as noted above, Johnson brings discrimination claims under both Title VII and § 1983. Failure to exhaust administrative remedies is an affirmative defense to the former, *see Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013), but not to the latter, *see Williams v. City of Chi.*, No. 11 C 1118, 2012 WL 205908, at *4 (N.D. Ill. Jan. 24, 2012) (collecting cases). The Court will therefore consider Johnson's suspension in the course of analyzing the merits of his discrimination claims.

6

very least, the plaintiff must "show not only that the employees reported to the same supervisor, engaged in the same conduct, and had the same qualifications, but also [ ] that there were no 'differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them.'" *Ineichen*, 410 F.3d at 960–61 (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000)).

The two female employees who Johnson claims were similarly situated to him are Mersija Besic[5] and Lulvet Cooper. In support of his assertion that Besic and Cooper were similarly situated to him, Johnson relies primarily upon his own deposition testimony. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 14.[6] During his deposition, Johnson was asked whether he knew of any re-picks that had ever been caused by errors similar to his own. Def.'s LR 56.1(a)(3) Stmt., Ex. 3 ("Johnson Dep."), at 41:15–20. He answered that Besic had made an error causing a re-pick around 2011 while she was working as the administrative manager at the Forest Glen Garage. *Id.* at 42:13–17. That year, Johnson was working at the Chicago Avenue Garage. *Id.* at 42:2–10. In response to a question about who Besic's supervisor was at the time of her purported error, he answered, "I don't know." *Id.* at 43:19. And

---

[5] It appears to be coincidental that this is the same Mersija Besic who, according to Johnson, ultimately played a role in his suspension. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 12, 47.

[6] Johnson also cites a document sent from CTA to the EEOC that lists Cooper as having been employed as an administrative manager in 2013, Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 11, as well as what appears to be an undated human resources form (the "360-Degree Employee Development Review Assignment Sheet") asking Johnson to provide feedback about Besic and characterizing Besic as a "peer" in relation to Johnson, *id.*; Pl.'s LR 56.1(b)(3)(B) ¶ 47. Neither of these documents materially adds to the substance of Johnson's deposition testimony. And in any event, the latter document is unauthenticated and therefore inadmissible. *See Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1005 (7th Cir. 2013).

7

in response to a question about how he came to learn of Besic's error, he similarly answered, "I don't know. I don't remember." *Id.* at 43:15–16, 43:20–23. Johnson also testified that Cooper, another administrative manager, had made an error that caused a re-pick at some point. *Id.* at 44:12–46:7. He could not remember when this re-pick occurred; nor could he remember which garage Cooper had worked at when she made the alleged error. *Id.* at 46:8–15.

No reasonable jury could find from this evidence that Besic and Cooper were similarly situated to Johnson, much less that Johnson was the victim of gender discrimination. Rather, the evidence indicates at most that Besic and Cooper, while working as administrative managers, made errors that caused re-picks. It does not establish that Besic and Cooper made the same type of error as Johnson, had the same supervisor as Johnson, had the same qualifications as Johnson, or even worked in the same location as Johnson. More importantly, the evidence makes no mention of whether Besic or Cooper were ever suspended or otherwise disciplined for their purported errors. Without such evidence, Johnson cannot show under the *McDonnell Douglas* framework that Besic or Cooper was a similarly situated employee who was treated more favorably than he was. *See, e.g.*, *Ineichen*, 410 F.3d at 960–61; *Formella*, 817 F.3d at 512 (finding that plaintiff had not identified a similarly situated comparator where the only supporting evidence plaintiff offered was "a brief passage from his own deposition testimony, as to which he lacked personal knowledge").

Moreover, considered as a whole, the record is bereft of any indication that Johnson's suspension had anything to do with his gender. It is undisputed that Johnson is unable to identify an instance when "anyone at CTA ever ma[de] comments regarding his gender." Def.'s LR 56.1(a)(3) Stmt. ¶ 30. Furthermore, Johnson admits that he believes he was suspended because Besic and another female employee thought he had "insulted them in meetings" and therefore "disliked him." Def.'s LR 56.1(a)(3) Stmt. ¶ 15. Evidence that a plaintiff has suffered an adverse employment action merely because of another employee's personal animosity toward him does not give rise to an inference of gender discrimination. *Hester v. Ind. State Dep't of Health*, 726 F.3d 942, 948–49 (7th Cir. 2013).

For all of these reasons, Johnson has failed to show that, with regard to his suspension in May 2013, he was treated less favorably than any similarly situated female employees. He has also failed to adduce any other evidence from which a reasonable jury could find that his gender was the reason for his suspension. Thus, to the extent Johnson's discrimination claims are based on his suspension, CTA is entitled to summary judgment in its favor.

**B. Termination**

Next, Johnson asserts that he was discriminated against on the basis of his gender when he was terminated from his employment toward the end of 2013. As with regard to his suspension, he argues that a reasonable jury could infer discrimination in connection with his termination based on the fact that similarly situated female employees either kept their positions as administrative managers

9

or were rehired into other CTA positions upon the abolishment of their administrative manager positions. *See* Pl.'s Resp. at 6–8.

In support, Johnson primarily relies on a CTA spreadsheet sent to the EEOC that lists eleven employees, including Johnson, who held the position of "Manager, Administration – Bus" during 2013.[7] *Id.*; Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. 2, at 1, 3. The spreadsheet shows that Johnson was the only male employee who held this position, and that he was also the only employee in this position who was terminated at the end of 2013 due to his position's abolishment. Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. 2, at 3.

There are several reasons why no fact finder could reasonably infer intentional gender discrimination based on the spreadsheet alone. As a threshold matter, Johnson has again failed to marshal evidence to show that the other employees listed on the spreadsheet were similarly situated to him. It is not enough to show that he and the other employees merely held the same position, particularly when the record suggests that many factors may have differentiated these employees from Johnson. *See Diaz v. Kraft Foods Glob., Inc.*, 653 F.3d 582, 590 (7th Cir. 2011) (holding that employees are not similarly situated merely

---

[7] Johnson also relies on two other pieces of evidence, but neither supports his argument. First, he cites the same unauthenticated human resources form that the Court noted is inadmissible, *supra*. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 49–52; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 11–15. Second, he cites passages from the deposition of CTA employee Jeanette Martin-Freedman. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 49–52. This deposition testimony sheds no light on whether Johnson was treated less favorably than any similarly situated female employees. Martin-Freedman is not one of the employees who Johnson claims was similarly situated to him, and the cited portions of Martin-Freedman's deposition do not discuss any such employees. *See id.* (citing Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. G, at 7:18–24, 44:9–23, 78:1–8).

because they are employed in the same position). For example, administrative managers within the Bus Operations Department sometimes had different supervisors and different work locations. *See* Johnson Dep. at 42–46 (discussing supervisors and different work locations); *see also* Def.'s LR 56.1(a)(3) Stmt., Ex. 15 (bus operations organizational chart showing that administrative managers reported to different supervisors and worked at different locations). In addition, the spreadsheet itself highlights the possibility that some of the other administrative managers had more seniority than Johnson. *See* Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. 2, at 3 (listing dates under a column titled "Job_Date," and showing that six of the ten other employees had job dates that started before Johnson's). Johnson does not address such differentiating factors, and he thus has not met his burden of showing that any of the ten other employees listed on the spreadsheet were similarly situated to him. *See Ineichen*, 410 F.3d at 960–61.

Even if Johnson could show that these employees were similarly situated to him, however, a reasonable jury still could not infer that Johnson was treated differently on account of his gender. It is critical to note that, according to Johnson himself, at least some of the other administrative managers also had their positions abolished in 2013 but were subsequently rehired into other CTA positions and thus were not ultimately terminated. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 36; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 37. Johnson, too, applied to be hired into another CTA position. He applied for the positions of Senior Manager and General Manager, but his applications were unsuccessful because, at least for the Senior Manager

11

position, he had one of the lowest interview scores. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 41, 43. Thus, the relevant evidence suggests that Johnson was turned down for these positions simply because he did not demonstrate during his interviews that he was a qualified applicant. Johnson neither rebuts this evidence nor argues that his low interview scores were a mere pretext for discrimination. He thus cannot prevail on his discrimination claims using the burden-shifting method of proof under *McDonnell Douglas*.

More generally, no reasonable jury considering the evidence as a whole could find that Johnson's gender caused CTA to terminate his employment. As noted above, no one at CTA ever made comments to Johnson regarding his gender. Def.'s LR 56.1(a)(3) Stmt. ¶ 30. Moreover, soon after Johnson was informed that his position was being abolished, McMillan-Robinson—one of the same women who Johnson claims played a role in his suspension—actively encouraged Johnson to apply for other jobs within CTA. *Id.* ¶ 40. And ultimately, although Johnson was not hired for the Senior Manager or General Manager position, four of the seven successful applicants for Senior Manager were men, and six of the seven successful applicants for General Manager were also men. *Id.* ¶¶ 44–45.[8] These facts undercut Johnson's theory that CTA treated him unfavorably by abolishing his position and declining to rehire him because he was male.

---

[8] In his response to CTA's statement of facts, Johnson has not indicated whether he disputes these figures. They are therefore deemed admitted for purposes of CTA's summary judgment motion. *See* LR 56.1(b)(3); *Smith*, 321 F.3d at 683 (7th Cir. 2003).

In his response brief, Johnson points to two facts from which he claims a jury could nevertheless infer gender discrimination. First, he refers to an affidavit in which CTA employee Hattie Knazze "stated that Ms. Besic said that she was going to get him, meaning 'Maurice [Johnson].'" Pl.'s Resp. at 10. Second, he claims that "Ms. McMillon stated in her notes to the EEOC[ ] that Maurice Johnson had been 'blackballed.'" *Id*. There are several reasons why these items are of no avail to Johnson's position. As an initial matter, Johnson does not support either of these facts with a citation to the record. At the summary judgment stage, the nonmovant can create a genuine issue of material fact only by pointing to admissible evidence in the record; "it [is] not the district court's job to sift through the record and make [the nonmovant's] case for him." *5443 Suffield Terrace*, 607 F.3d at 510. Additionally, even if Johnson could support these statements with citations to admissible evidence, the statements would indicate at most that Besic and McMillon personally disliked Johnson. As explained above, evidence of mere personal dislike alone does not support an inference of gender discrimination. *Hester*, 726 F.3d at 948–49.

In sum, Johnson has not shown that similarly situated female employees were treated more favorably than he was. He also has not shown that CTA's proffered reason for declining to rehire him after his position was abolished was mere pretext. As such, he cannot make a showing of gender discrimination under the *McDonnell Douglas* framework. In addition, setting *McDonnell Douglas* aside, the Court concludes that no reasonable jury considering the evidence as a whole

could find that Johnson's gender caused his termination. *See Ortiz*, 834 F.3d at 765. CTA is therefore entitled to summary judgment on Johnson's discrimination claims.

## II. Retaliation Under Title VII

Johnson also claims that CTA suspended him and terminated his employment as a form of retaliation for his complaints about workplace discrimination. Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); *accord Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 887 (7th Cir. 2016). An activity is protected under Title VII only if it involves a complaint of discrimination specifically based on a protected characteristic, such as gender or race. *See Northington v. H & M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013). "Vague and obscure 'complaints' do not constitute protected activity." *Id.*

To overcome summary judgment on a Title VII retaliation claim, a plaintiff must show that a reasonable jury weighing the evidence as a whole could find that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the

14

adverse employment action. *Williams v. Office of Chief Judge of Cook Cty. Ill.*, 839 F.3d 617, 627 (7th Cir. 2016); *Bagwe*, 811 F.3d at 887–88.[9]

CTA argues that it is entitled to summary judgment because Johnson cannot establish either the first or the third element of his retaliation claim—that is, the elements of protected activity and causation. For the reasons provided below, the Court concludes that Johnson has created a genuine dispute of fact as to the first element, but not as to the third element. Summary judgment in CTA's favor as to Johnson's retaliation claim is therefore warranted.

### A. Statutorily Protected Activity

As noted above, the first element of a retaliation claim requires a plaintiff to show that he engaged in a statutorily protected activity. *Bagwe*, 811 F.3d at 887–88. Johnson claims that he engaged in a statutorily protected activity when he complained about his suspension to Claypool in May 2013, as well as when he complained to Drucker in June 2013.

Johnson's letter to Claypool in May 2013 clearly did not involve a protected activity. It is undisputed that the letter did not claim that Johnson had been suspended because of his gender or otherwise make allegations of discrimination.

---

[9] One way that a plaintiff may seek to create a triable issue of fact with regard to a retaliation claim is by pointing to similarly situated employees who were treated more favorably than he was under the *McDonnell Douglas* framework. *See Northington*, 712 F.3d at 1065. Here, however, Johnson does not appear to argue that he was treated less favorably than any similarly situated employees who did not engage in a statutorily protected activity. Furthermore, to the extent he intended to advance such an argument in his brief, the argument fails because, for the same reasons as explained above regarding his discrimination claims, he has not provided sufficient evidence from which a reasonable jury to identify an employee who was substantially similarly situated to him.

15

Def.'s LR 56.1(a)(3) Stmt. ¶¶ 19, 22. Instead, the letter merely discussed Johnson's work record and complained that the suspension was the result of "personal feelings" that Besic held toward him. *Id.* ¶¶ 18, 20. Making such a complaint of general unfair treatment, without specifically "indicating a connection to a protected class or providing facts sufficient to create that inference," is not a protected activity under Title VII. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).

Johnson's complaint to Drucker is a different matter. CTA denies that this complaint involved allegations of discrimination in violation of Title VII. Def.'s LR 56.1(a)(3) Stmt. ¶ 27. But Johnson maintains that he did, in fact, raise such allegations of discrimination with Drucker. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 27. In support, he cites a page of his deposition in which he stated that he "specifically mentioned to [Drucker] that [he] felt like [he] was discriminated against" by Besic and McMillan. *Id.*; Johnson Dep. at 64:8–16. In addition, he cites an affidavit that he submitted along with his summary judgment filings, in which he states: "On or about June 21, 2013, I met with Bethany Drucker [ ] and filed a charge of sex discrimination with Ms. Drucker." Johnson Aff. ¶ 17, ECF No. 100.[10] Drawing

---

[10] CTA asks the Court to disregard Johnson's affidavit to the extent it conflicts with his deposition testimony. Def.'s Reply at 3–4, ECF No. 104. Indeed, it is well established that "a plaintiff cannot rely on conflicting affidavits and deposition testimony in order to defeat a motion for summary judgment." *Szymanski v. Rite-Way Lawn Maint. Co.*, 231 F.3d 360, 365 (7th Cir. 2000). But rather than conflicting with his deposition testimony, the cited portion of Johnson's affidavit merely supplements his prior testimony by specifying that the complaint of discrimination he described in his deposition was a complaint of gender discrimination. The Court will therefore consider this portion of Johnson's affidavit in reviewing CTA's motion for summary judgment.

16

inferences in Johnson's favor, a reasonable jury could find from this evidence that Johnson's complaint to Drucker was a complaint of sex discrimination and thus involved a statutorily protected activity. Johnson has therefore met his burden of creating a triable issue of fact as to the first element of his retaliation claim.

### B. Causation

The third element of Johnson's retaliation claim requires a showing that his complaint to Drucker was causally connected to either his suspension or his termination. *Bagwe*, 811 F.3d at 887–88. Johnson's complaint to Drucker clearly could not have caused his suspension, because the complaint was lodged over a month after the suspension occurred. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 12, 25–26. Thus, Johnson can avoid summary judgment on his retaliation claim only by showing that his complaint to Drucker was causally connected to his termination later in 2013.

To show a causal connection between a protected activity and an adverse employment action, a plaintiff must show that the employer or supervisor who was responsible for the adverse employment action had actual knowledge of the protected activity. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004); *Tomanovich*, 457 F.3d at 668. Thus, to avoid summary judgment, Johnson must provide evidence that an individual at CTA who made abolishment, termination, or rehiring decisions regarding his employment had actual knowledge about his complaint to Drucker. But Johnson has adduced no such evidence. Moreover, CTA's statement of facts confirms that no CTA employees, other than Drucker

herself, ever had knowledge of Johnson's complaint. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 28–30. In support, CTA cites a portion of Johnson's deposition in which Johnson was unable to identify anyone else at CTA who may have known about the complaint. *Id.* ¶ 28 (citing Johnson Dep. at 72:10–73:8). CTA also references the testimony of Omar Brown, who is CTA's Vice President of Human Resources and was the person who informed Johnson in September 2013 of his position's abolishment. *Id.*, Ex. 14. In his deposition, Brown attested that he had no knowledge that Johnson had complained to Drucker or otherwise complained of discrimination. *Id.* ¶¶ 29–30. In responding to CTA's statement of facts, Johnson denies that no one other than Drucker ever had knowledge of his complaint. Pl.'s LR 56.1(b)(3)(B) ¶¶ 28–30. But he does not point to any supporting evidence as a basis for this denial; nor does he otherwise offer any evidence to rebut CTA's assertions. *Id.*[11] He therefore has failed to create a genuine dispute of material fact as to whether any CTA employee involved in abolishment, termination, or rehiring decisions had actual knowledge of his complaint to Drucker.

---

[11] In attempting to support his denial, Johnson relies upon an affidavit in which Drucker describes a CTA meeting held on July 18, 2013. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 28–30 (citing Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. F ("Drucker Aff.") ¶¶ 6, 8). At the meeting, which Brown attended, Drucker gave a presentation about "the underutilization of certain Races and Genders in some areas [in CTA's workforce] and an overconcentration of certain Races and Genders in other areas when compared to the workforce in Cook County, Illinois." Drucker Aff. ¶ 6. At no point in the affidavit does Drucker state that she ever discussed Johnson's or any other individual's discrimination complaints with anyone at CTA, whether during the meeting on July 18, 2013, or otherwise. Johnson's citation to Drucker's affidavit is therefore insufficient to support his denial of the relevant paragraphs of CTA's statement of facts. *See Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("[A] general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial.").

Next, Johnson suggests that the temporal proximity of his complaint to the abolishment of his position is alone sufficient to show a causal connection. Pl.'s Resp. at 8–9. But for two reasons, this argument is unpersuasive. First, the temporal proximity of these events is immaterial given that Johnson has not created a triable issue of fact regarding actual knowledge. *See Luckie*, 389 F.3d at 714–15. Furthermore, even if Johnson could point to evidence of actual knowledge, his argument about temporal proximity is foreclosed by precedent. As the Seventh Circuit has held, a three-month gap between a protected activity and an adverse employment action is insufficient evidence on its own for a jury to infer that the two events were causally related. *See Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 919 (7th Cir. 2000) (three-month gap was insufficient to establish causation in retaliation case); *see also Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001) (casting doubt as to whether a two-month gap could be sufficient).[12] As such, no reasonable jury could find, merely based on the timing of the events in question, that the complaint to Drucker in June 2013 was causally connected to either the abolishment of Johnson's position in September 2013 or his subsequent termination.

---

[12] In his brief, Johnson cites *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720 (7th Cir. 2003), for the proposition that a three-month gap between a protected activity and adverse employment action *is* sufficient to suggest causation. But *Sitar* does not at all stand for that proposition. The plaintiff in *Sitar* offered ample evidence of causation apart from the timing of the events in question to support her retaliation claim. *Id.* at 728–29. Here, Johnson offers no such additional evidence to buttress his allegations of causation. His reliance on *Sitar* is therefore unpersuasive.

19

Because Johnson has failed to adduce evidence indicating that his complaint to Drucker was causally connected to any adverse employment action that he suffered, no reasonable jury, considering the evidence as a whole, could find that CTA's decision to abolish Johnson's position and terminate his employment was a form of retaliation against a statutorily protected activity. As such, CTA is entitled to summary judgment on Johnson's retaliation claim.

## Conclusion

For the reasons stated herein, CTA's motion for summary judgment [88] is granted. This case is hereby terminated.

**IT IS SO ORDERED.**           ENTERED   3/24/17

*/s/ John Z. Lee*

_____

**John Z. Lee**
**United States District Judge**